BOLIN, Judge.
This is a tort action arising out of a three-car collision occurring on U. S. Highway No. 84 in Winn Parish on April 17, 1964, at about 5 :45 o’clock in the afternoon. Kenneth C. Edwards sues J. W. McLeod and his liability insurer, New York Fire & Marine Underwriters, Inc., and Howard Lcveque, Jr., Jere W. Germany and their liability insurer, American Mutual Liability Assurance Company. Edwards’ suit against Germany was dismissed and from judgment in favor of plaintiff against all other named defendants in solido for $8,-202.60, the latter appeal. The .judgment recognized the policy limits of both com *640 panies was $5,000 each with respect to bodily injuries for one person in each occurrence.
In the vicinity of the accident the highway runs generally east and west, is of asphalt surface and is approximately 24 feet wide. Immediately preceding the collision it had been raining but at the moment of impact the witnesses were uncertain whether the rain had ceased or whether a slight mist was still falling. At the site of the accident the highway is straight. The collision occurred near the center of a valley between two hills. A commercial establishment known as Sam’s Bait Stand is situated •on the north side of the highway approximately 350 feet east of the point of impact. Plaintiff was operating his 1953 Buick in a westerly direction. Leveque was driving a 1960 Valiant sedan, owned by Germany who was a passenger therein, also in a westerly direction and following the Edwards vehicle. McLeod was driving his 1958 Oldsmobile in an easterly direction and attempting a passing maneuver when his car and Edwards’ vehicle collided head-on in the north lane of the highway. Almost simultaneously the vehicle being driven by Leveque ran into the rear of the Edwards car.
Two contradictory theories are advanced as to the cause of the accident. McLeod and his insurer contend Edwards had parked his car on the north shoulder of the road because of a rainstorm and had driven from the shoulder onto the paved surface while McLeod was engaged in the passing maneuver. They contend that when Edwards drove onto the highway McLeod approached from the west and Leveque approached from the east so near as to make the accident unavoidable by them. On the other hand, Edwards contends he was driving at a relatively slow rate of speed because of the weather condition when he was suddenly confronted with the approach of the McLeod car in his lane of travel at which time he was being overtaken from the rear by the Leveque automobile. He contends the head-on collision occurred between his vehicle and McLeod’s after which his vehicle was struck from the rear by the Germany vehicle.
The issues presented are purely factual. After listening to and observing all the witnesses in open court, the trial judge visited the scene of the accident and has favored this court with written reasons for his findings in the course of which he states:
******
“When the Court visited the scene of the accident it noted that the visibility from the point of impact looking east is more than one thousand feet and that from a point 262 feet west of the bait stand to a point 200 feet east of the bait stand, there were double yellow lines in the middle of the highway indicating that visibility was impaired and that no traffic should attempt a passing maneuver in either direction. While the record does not establish that these lines were there at the time of the accident nevertheless it shows that the Highway Department has determined that a passing maneuver within the space marked by yellow lines is a dangerous maneuver and one which leaves a blind spot where you cannot see a vehicle coming from the opposite direction. Mr. McLeod stated that he waited to attempt the passing maneuver until the yellow line on his side said it was safe to pass. If this be true, then he began his passing maneuver less than 150 feet west of the point of impact but if, as he said elsewhere, he began his passing maneuver just east of Sam’s Bait Stand, that would be more than 300 feet away from the point of impact and at a time when the yellow line indicates that an oncoming car is not visible. The Court is not impressed by the argument that Edwards pulled upon the road from the shoulder but finds that Edwards was proceeding in a1 westerly direction at a proper rate of speed. The Court further feels that Mr. McLeod attempted a passing maneuver when his vision was blocked and he could not see a vehicle coming up the hill from the op *641 posite direction. Therefore, the negligence of Mr. McLeod in attempting to pass on top of a hill when his vision was blocked was the proximate and' primary-cause of the accident between his vehicle and the automobile driven by Kenneth Edwards * * *
"Mr. Leveque stated that he had no recollection whatsoever of the accident and Mr. Germany’s only recollection is that he was not paying too much attention to the driving but that he first saw Edwards’ car about 120 feet away and immediately warned Leveque of the impending collision. Mr. Leveque had a full and unobstructed field of vision for more than one thousand feet prior to the point of impact and he is, therefore, charged with having seen what he should have seen— the vehicles of Edwards ahead of him and the McLeod car coming toward him on the wrong side of the road. The fact that the two collisions occurred within moments of each other indicates that the Germany vehicle was following closely upon the Edwards vehicle — too close under the prevailing weather and road conditions. While a driver may assume that the vehicle in front of him will continue without an abrupt stop, Leveque should have seen the McLeod vehicle coming down the hill in the north traffic lane with its lights on and realized that a collision would occur. His failure to observe the emergency created by the McLeod vehicle and to keep his automobile under proper control was negligent and a contributing factor to the three-car collision * * *
“It is likewise alleged that Jere Germany was guilty of independent negligence in failing to warn Leveque against driving too closely behind Edwards’ car. A passenger is not required to keep constant observation of the road as is a driver. Germany did observe the Edwards vehicle first and warned Leveque. This is all that was required of him and he is not guilty of any negligence.”
***** *
We concur in the finding of the trial judge that the accident was caused by the concurrent negligence of McLeod and Leveque and that Germany was free of independent negligence in failing to warn Leveque.
Plaintiff was awarded the sum of $5,000 for his personal injuries, $522.60 for medical expenses and $250.00 for the damage to his automobile. The court further found his injuries disabled him from returning to work for a period of forty and one-half weeks; that he was earning $60.00 per week at the time of the accident and he was therefore awarded an additional sum of $2,430.00 for loss of wages.
Appellants contend the award is excessive principally as it relates to the sum for personal injuries and for loss of wages. In the accident plaintiff received severe and painful injuries which were briefly summarized by his physician as:
“Laceration of the face, fracture of five ribs, partial collapse of one lung, pneu-monitis and pleural pain from adhesions from the pneumonitis.”
 Plaintiff was hospitalized for 24 days and was seen frequently thereafter by his physician for many months. Under the circumstances and facts as developed during this trial, we think the amount of the award discloses no abuse of the discretion vested in the trial judge under Louisiana Civil Code Article 1934(3). We further find the medical evidence substantiates the lower court’s conclusion the accident caused plaintiff to be away from his work for a period of forty and one-half weeks and the award of $2,430.00 for loss of wages is fully supported by the evidence. There is no serious dispute over the other items of damages.
For the reasons assigned the judgment appealed from is affirmed at appellants’ cost.
Affirmed.